UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,

    Plaintiff,

v.

Freddie Sanchez,

    Defendant.

Case No. 1:23-cr-00313-JGC-2

**ORDER**

This is a criminal case in which the Defendant Freddie Sanchez is one of eighteen defendants who stand charged with membership in a Marion, Ohio, Drug Trafficking Organization (DTO).

Defendant Sanchez has filed two motions. First, he has filed a motion to compel, (Doc. 224 and a supplement thereto, Doc. 298), which the government opposes, (Doc. 304), and as to which the Defendant has filed a Reply, (Doc. 320), followed by a government Response thereto, (Doc. 350).

Second, the Defendant has filed a motion to suppress evidence that the government obtained through court-ordered GPS monitoring of the Defendant's automobile and a request for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). (Doc. 193 and a supplement thereto, Doc. 257). The government opposed the motion, (Doc. 284), and the Defendant replied. (Doc. 301-1).

For the reasons that follow, I deny both motions.[1]

**Background**

---

[1] To avoid further delay, this Order is deliberately barebones. In the event of an appeal, I will prepare, at a party's request, a more elaborate Order setting forth my reasons in greater detail.

1

On September 9, 2022, the government applied for court approval to install a GPS tracker on the Defendant's vehicle. (Doc. 284-3). That same day, United States Magistrate Judge Jonathan D. Greenberg issued the requested search warrant, (*Id.*), which the government later executed, (Doc. 284, PgID. 1251).

The Defendant's motion to suppress asserts that the affidavit supporting the GPS tracker warrant included factual allegations that the affiant either knew were false or included with reckless indifference to their truthfulness. (Doc. 257, PgID. 1099–100). The Defendant contends that the affiant FBI Special Agent, Drew Stragar-Rice, deliberately omitted certain information that if presented would have undercut the alleged probable cause in the affidavit. The government disagrees and opposes the Defendant's related request for a *Franks* hearing.

The Defendant's motion to compel seeks production of 1) tipster information in memoranda acquired by and in the custody of the Lorain, Ohio, Police Department (LPD); and 2) the identity of the LPD and the government's confidential sources. The Defendant asserts that these materials are necessary to establish his *Franks* challenge to the GPS tracker warrant. That is so, he claims, because the desired material will show that the warrant's supporting affidavit contained false information and material omissions.

## Discussion

1. Motion to Compel

The LPD documents the Defendant seeks are a memorialization of two tips received about the Defendant's drug-related activities in the Lorain area.

One tipster was anonymous. (Doc. 350-1, PgID. 1732). The other tip came from an individual known to the LPD and who had provided information in the past. A summary of that

latter interaction stated that the informant's information had previously been "good and bad." (Doc. 350, PgID. 1722).

LPD legal counsel refused the Defendant's demand for disclosure of the tipsters' identities. (Doc. 257-6, PgID. 1130). He did so because "[t]he redaction of tipsters' information in LPD is standard operating procedure. If such information were to be disclosed, LPD wouldn't receive tips. The tipster has been assured confidentiality." (*Id.* at PgID. 1129).

The Defendant contends that disclosure of the tipsters' identities should nevertheless result. This is so, he argues, because the assurance of confidentiality came from the LPD and not the FBI. (Doc. 320, PgID. 1589–93).

This is a non sequitur. By passing the information on to the FBI, the LPD has not cancelled or revoked its assurance of confidentiality to its tipsters.

This circumstance is not unusual. Indeed, it is commonplace.

If a law enforcement agency's transmission of information it obtained upon a promise of confidentiality were to nullify involuntarily such a promise, there would never, as a practical and wholly undesirable matter, be interagency cooperation.[2]

An implicit understanding existed between the LPD and the FBI that the Bureau would not disclose the LPD's confidential information. This is so, even if the LPD did not expressly impose conditions on its turning over of the tipsters' information.

Inter-department and interagency cooperation would cease to exist entirely if transmittal of such confidential information might result in its disclosure. The fact that the FBI deemed itself

---

[2] When I began, more than four decades ago, my service as a United States Magistrate Judge, I quickly learned that the exchange of information between state and federal law enforcement agencies occurred infrequently. The local authorities viewed federal requests for information as all "take, take, take" and never "share, share, share."

    This situation has ceased to exist over the intervening decades. The best indication of this change is the proliferation of joint federal-state taskforces working together across a broad variety of investigations.

(and the government in its briefing deems itself) bound by the LPD's promises of confidentiality is entirely understandable, appropriate, and lawful.

Accordingly, I find no merit whatsoever in the Defendant's demand for disclosure of what the LPD rightly deems and insists upon keeping secret.

2. Motion to Suppress and Request for *Franks* Hearing

A. Allegedly Omitted Information

Having reviewed the materials that the LPD refuses to turn over to the Defendant, I conclude that nothing in them contains *Franks* material. That information merely provided an incentive to the LPD to begin investigating the Defendant. What the two tipsters first brought separately to the LPD was simply, as is common, a precursor to what became the joint investigation that the LPD and FBI undertook.

The inclusion of further detail about those tips in the affidavit would have added nothing to the showing or finding of probable cause. Whether they were true or false (as tips sometimes are) simply does not matter. Indeed, if the information was "bad," no prolonged, indeed no joint, investigation between the LPD and the government would have occurred. Thus, Agent Stragar-Rice and Magistrate Judge Greenberg properly, and understandably, relied entirely on what the investigation later came to uncover.

Tips of this sort, which start investigators on the trail that leads to a warrant, are not the stuff of probable cause. *See United States v. Sharp*, 778 F.2d 1182, 1186 n.2 (6th Cir. 1985) ("[D]isclosure [of information about an informer] has usually been denied when the informer was not a participant, but was a mere tipster or introducer.").

In any event, Federal Rule of Criminal Procedure 16 does not require the government's disclosure of the LPD's memoranda. The part of that Rule relevant here obligates production of

an "item" only if the item is "within the government's possession" and is "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E); *see United States v. Sanders*, No. 21- 5945, 2024 WL 3218723, at *13 (6th Cir. June 28, 2024) (requiring a defendant to show under Rule 16 that the requested "investigatory materials, including documents related to a search warrant, could materially help a defendant refute the government's case-in-chief"); *United States v. Arambula*, 82 F. Supp. 3d 1316, 1319 (D.N.M. 2014) (refusing to require the government to produce under Rule 16 certain materials related to the government's debriefing of a confidential source because the defendant sought to use that information only to undermine the sufficiency of evidence supporting a warrant, not rebut the government's case-in-chief).[3]

Finally, the "informant's privilege" provides yet another reason why the Defendant is not entitled to these materials. *See Sharp*, 778 F.2d at 1186 n.2.

### B. Allegedly False Information

Lastly, I address the Defendant's contention that the affidavit contained statements that were either knowingly false or made with reckless indifference to their truth.

The Defendant contends that the affidavit's description of the recorded encounter between a confidential source, the Defendant, and Co-Defendant Stanley was false. Upon review of the underlying material, I conclude that the affidavit contained no mistaken or deliberately false information in the affidavit's description of that encounter. Moreover, the affidavit's

---

[3] Indeed, much, if not most, of the investigative materials that the government voluntarily produced to counsel in this case are outside the limitations of Rule 16. The government's default "open file" approach serves everyone's interest. A fully informed attorney can fully inform his or her client about what the government has against the client. This enables counsel and client to assess accurately the risks of going to trial. This often prompts a defendant to enter a plea and avoid both a trial and its more severe consequences at sentencing.

Whenever there is a plea, rather than a jury verdict, the government, its witnesses, the defendant, and the court itself benefit.

5

description of the three-way conversation between Co-Defendant Stanley, the confidential-source purchaser, and the Defendant was entirely correct.

As the affidavit alleged, pole-camera evidence showed the Defendant arriving and heading toward the house before the confidential source appeared. The camera showed him leaving after the source had purchased the narcotics. References to a supplier before a recorded sale show that the person who arrived was, indeed, the Defendant. Portions of the recorded conversation between the three participants make clear that the Defendant was one of those participants.

Whether, at some point, the Defendant was in the backyard or something happened beside the doghouse does not matter. What matters are the preliminary discussions between the confidential source and Co-Defendant Stanley, the poll-camera evidence, and the conversation as the transaction occurred. This is more than enough to attribute complicity to the Defendant.

Thus, neither omission nor false information tainted the affidavit. There was no *Franks* violation; therefore, there is no need for a *Franks* hearing.

## Conclusion

For the foregoing reasons, it is hereby ORDERED THAT:

1. Defendant's Motion to Compel and its Supplement, (Doc. 224; Doc. 298), be, and the same hereby are, denied;

2. Defendant's Motion to Suppress and Request for a *Franks* Hearing and its Supplement, (Doc. 193; Doc. 257), be, and the same hereby are, denied; and

3. The tentatively scheduled hearing on these motions in July 2024 be, and the same hereby is, vacated.

SO ORDERED.
DATE: 7/8/2024

*/s/ James G. Carr*
Sr. U.S. District Judge